UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) | |
| v. | ) ) | Crim. No. 1:19-cr-10081-IT |
| NIKI WILLIAMS | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT NIKI WILLIAMS' SENTENCING MEMORANDUM**

**I.     INTRODUCTION**

Unlike most, if not all, of the dozens of persons charged in this scandal, Niki Williams has not lived a life of privilege. She had limited opportunities and faced constant tragedies: she grew up in a single-family home; her mother died on her 29th birthday; her mother's boyfriend—Niki's father figure—died a few months later; one year after that, her home was destroyed by Hurricane Katrina, forcing her to move to Houston; and after her arrest in this case, she lost her job and was generally unemployed when Covid-19 made her prospects even more bleak.

But she never let these struggles dim her spirit. Despite not having much herself, she chose a life of service. She served others: her family, her church, and her school Most importantly, she served her students—special education students who, too often, were left behind. But with Niki on their side, they propelled themselves forward.

1

Niki deeply regrets her involvement and has taken responsibility for her conduct. Despite the dramatic, negative impact this case has had on her life, she feels badly for those she let down: she is remorseful for lying to the testing companies, she is ashamed for violating her school's trust, and she is devastated that her actions may have hurt students. She tears up thinking of all the students who relied on her. Even though she pleaded guilty and is facing sentencing in Federal Court, when asked by probation if she wanted the judge to know anything else, she apologized to her students.

Because of this case, Niki lost her job, struggles for money, and has an uncertain future. An incarcerated sentence is not warranted. This Court should sentence her to one year of probation.

## II.     APPLICATION OF 18 U.S.C. § 3553

Consistent with the federal courts' long-standing, deep concern for individualized sentencing, the United States Supreme Court has repeatedly affirmed individualized assessments accomplished by considering applicable 18 U.S.C. § 3553(a) factors in fashioning an appropriate sentence. *See e.g. United States v. Booker*, 543 U.S. 220, 259-260 (2005); *Rita v. United States,* 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Pepper v. United States*, 562 U.S. 476 (2011).[1]  Moreover, the U.S. Supreme Court has highlighted Congress's directive that: "[n]o limitation . . . be placed on the

---

[1]     The sentencing court is not required to consider individually each of the Section 3553(a) factors before issuing a sentence.  Rather, a district court need only consider the factors *en masse* and state its reasons for imposing a given sentence.

information concerning the background, character, and conduct of a defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence." *Pepper*, *supra*, at 490-91, *citing* 18 U.S.C. § 3661.

### III. RELEVANT SENTENCING FACTORS

#### A. PERSONAL HISTORY & CHARACTERISTICS

Niki is so much more than this mistake. She is someone who inevitably touches those around her. Her instinct is always to serve others before herself. Everyone who knows her personally or professionally immediately recognizes this in her.

Even her involvement in this scheme began as a misguided attempt to help others. She did not set out to be part of a conspiracy. She was not looking for a quick buck. This began innocently. She was asked to administer a test for an out-of-town special education student. She saw an opportunity to help one more student. When it became apparent that she was engaged in wrongdoing, she should have stopped. She knows this. She did not, because she believed her wrongdoing was helping a student in need.

> When this first started, I thought I was helping some special needs students, not that its right, but I felt sorry for them being able to manage their grades but scoring poorly on standardize test. I didn't care about the money. I felt like they deserved an opportunity. I was wrong although they deserve the opportunity just not in the manner it was done.

*See* Letter from Niki Williams, Exhibit 1.[2]

---

[2] Niki had no reason to question that the students required special accommodations. All she knew was that the ACT/SAT had granted the students special needs status. To this day, she has no reason to suspect their status was false.

3

Niki was always destined to help others:

> I have known Niki and her family for over thirty-seven (37) years. She was about five (5) years old when I first met her and her deceased mother, Delores Williams, in 1983.
>
> We were members of Mount Carmel Missionary Baptist Church, in New Orleans, Louisiana. She and her mother both sang in the choir. Niki was a member of the Sunshine Choir, and eventually became a member of the Youth choir and Youth Department. I served as one of the Youth Directors at that time. Niki was, and still remains, very active in the Church. She was especially active in the Choir, Sunday School, and Youth Activities. She became one of our youth leaders; she loves working with children and young people. I believe that is why she pursued a career in Education; becoming a teacher—fulfilling her desires to serve as an instructor, mentor, and youth leader.

*See Letter from Mary Jackson*, Exhibit 2.

She was displaced from her home in New Orleans by Hurricane Katrina. Most would be concerned with themselves. Niki moved on to Houston and cared for others. She had an immediate impact in her new school and in service of other displaced Louisianians:

> I met her when she came to work as a counselor for Katrina hurricane evacuee students, she herself an evacuee . . .Niki came to Yates making friends with coworkers and students alike as an advocate for the displaced students. She was instrumental in helping me and school staff graduate almost a 100 Louisiana students the first year they arrived in Houston[.] Niki assisted with procuring the evacuated students previous records, assisting them in getting used to a new school and school system and listening to their emotional trauma of being thrown into a new life in a new city.

*See Letter from Beverly Ratliff,* Exhibit 2.

Her school became her family, which meant she was there to serve it and its students:

> On numerous occasions she not only assisted in coaching, but also mentored several of the girls. She provided food, clothing, and moral support to many of the students at Jack Yates High School. When a student was in need, she was there to provide support. Niki took on the role of mother, father, sister, grandparent for many. The students that crossed her path were considered family.

*See Letter from Patrick Augbon*, Exhibit 2.

> Many of the extra-curricular positions that Niki took were unpaid but her love for the students and her dedication to them was more valuable than money to her. She was and is beloved by all she has touched.

*See Letter from Beverly Ratliff,* Exhibit 2.

> She worked with our most severe and disabled special needs students and protected them as though they were her own…She never called in sick, never said 'no' when asked to perform additional duties, and truly loved the students…Students would often come to her for support before going to their own parents.
>
> Niki was also the Cheerleader Coach Sponsor…Ms. Niki would use rental cars to take them to games when the buses were not available, and always ensured they had something to eat before games. Additionally, she would often cook and bring food to them.
>
> Niki had a career at Yates HS although she didn't earn much money. She would spend what she had to help take care of others.

*See Letter from Kenneth D. Davis, Ed.D.,* Exhibit 2.

> She has always gone above and beyond to help the students in every way possible, including assisting with tutoring and fundraising to help their extra-curriculum activities.   She not only assists with students, she's also readily available to assist her co-workers, family and friends. There has never been a time that I wasn't able to call on her in a time of need.

*See Letter from Carolyn Travis,* Exhibit 2.

> She has always given freely of her time and resources to help students at Yates High School. Many activities at school were successful because of her work organizing and executing necessary details. From graduations to proms, from pep rallies, to games, from field days to field trips, Niki Williams worked to help our students.
>
> Niki William's job as a Teacher Assistant was a necessary, but low paying position. She was a tremendous asset for the Special Education department at Jack Yates. She went above and beyond to help our Special Needs students. This is a Title 9 school with economically and educationally disadvantaged students. The students' needs are great, and Niki is one of the people that did anything she could to help.
>
> During the time that I worked with Niki Williams, she has always worked a second job to make ends meet. Even in that situation, she helped our students through difficulties. I remember a student who became homeless a few months before graduation. Niki took the child in and helped her get past that hurdle and graduate. She always stepped [sic] up to help.

*See Letter from Valeri Clouser,* Exhibit 2.

> As the years progressed, I witnessed Niki working hard, including pulling me in, to obtain donations of dress shoes, suits, and dresses, for students that could not afford them for Prom and for job interviews.
>
> Niki Williams is a dedicated servant to our youth. She is deeply missed, and we need more educators and persons such as herself that make the necessary sacrifices to improve the lives of the have-nots.

*See Letter from Ted Irving,* Exhibit 2.

Her relationships did not stop at graduation. She continued to play a valuable

role in her students' life:

> Coach Williams coached me for four years. I was the Captain of the Cheerleading squad, and Coach Williams has helped me in numerous ways over the years. She was not just a coach. She was a mentor, tutor,

6

and motivator. She is very trustworthy, honest, and loyal to her students and co-workers. I have known her for at least ten years.

Coach Williams is not just a former coach; she is a friend. Coach William's relationship with me did not end after graduating from high school. Coach Williams remained in contact with me during my college years throughout my adult years. She provides me with great advice and mentoring and helps me care for my children as a single parent. I can always count on Coach Williams, whether personal, academic, or spiritual support. I would consider Coach Williams as a family member because of her continued love and support. She is like the "big sister" I never had. She is also a positive influence on my children's lives and many students who have attended Jack Yates High School.

*Support Letter* from Ieshia Ware, Exhibit 2.

Her impact on her friends and family was no different:

…[W]hen I gave birth to my daughter, Madison, she honored me with agreeing to be her Godmother…Niki is a person with a heart of gold. She is one of the most selfless and giving persons I know. For years, my job required me to work twelve months a year, including summer months, and I did not have anyone to watch my daughter. Without hesitation, Niki would care for her during the summer while I worked, exposing her to many aspects of things she learned in school through traveling, that I was not able to. I never had to wonder if Madison was okay, because I knew without a doubt that Niki would take care of her as I would have.

Additionally, Niki would take her on College tours with students from the High School Upward Bound Program. At 12 years old, Madison has visited more than 25 Universities across the country because of Niki. When schools closed during the Pandemic, Niki worked with Madison every day and helped her become familiar with online learning. Her love for Madison is unwavering.

*See Letter from Rachele Jones,* Exhibit 2.

Nikki Williams exudes many positive qualities. I have known Nikki, my entire life in the capacity of my elder cousin. She has always been a role model for various reasons, such as being the first to graduate college,

7

> pledge Zeta Pi Beta Sorority, teacher, mentor, and giving back to the community.

*Letter from Margaret Smith*, Exhibit 2.

> Having the privilege to help guide Niki both spiritually and in everyday situations, I saw her grow from a little girl to a fine young woman. Niki has been a mentor and big sister to many of our children. She has also been an inspiration to many others. Niki went through some very emotional times after the loss of her mother.
>
> Although she went through these difficult times, Niki was still able to focus on her goals. Unfortunately, Niki may have made a poor choice, but that decision truly does not define who she is. Niki is a very caring and loving person. She never hesitates to give a helping hand whenever needed. Niki always inspires the young people to do their best in school. Her zeal was and still is a motivating factor to those who love and know her well. Niki is an asset to her family and to all of us who are blessed to know her.

*Letter from Pastor Minnie Bailey*, Exhibit 2.

> Ms. Williams is not just a former co-worker to me; she is family. Ms. Williams was a survivor of the Katrina Hurricane in New Orleans, Louisiana, and when I met her at Jack Yates, she had recently moved to Houston.  As a result of her being displaced, I offered her a place to stay. Ms. Williams lived with my family and me during the time I worked for Yates and several years after.  During the duration of Ms. Williams residing in my home, she never did anything unethical toward my daughter or me.  She was a positive influence on my daughter and many students at Jack Yates High School.

*Letter from Sandra Hall*, Exhibit 2.

Since being charged, she has suffered tremendous setbacks. She lost her job, which gave her meaning and purpose. She is ashamed and disappointed in herself. She "struggle[s] daily with being able to support [her]self." *See Letter from Niki Williams*,

8

Exhibit 1. And yet, although she genuinely did not know the students in this case, she feels badly for them: "My heart goes out to the special need students in this case I hope that they will still pursue their college educations and not allow my foolish mistake to hinder them from being successful young people." *Ibid*.

This is who Niki is. Her concerns are always for others.

**B.     GUIDELINE CALCULATIONS**

*A. Williams should be considered a minor participant:*

Given that Niki was minimally involved in this offense, she should receive a downward departure:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)     the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)     the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

9

*See* Guidelines § 3B1.2.

Of the over 50 people charged, Niki was among the least involved. She had no sense of the scope and structure of the activity. She did not know the parents or their children. She did not know anyone outside of Houston.[3] She had no sense of what Singer was doing or how he organized the scheme. She did not plan or organize anything. She was just given orders and she followed. She had no decision-making authority. Her acts were limited to opening the school and submitting the paperwork to the test companies.

She benefited less than anyone else, both financially and substantively. Everyone around her profited handsomely off this scheme and the parents achieved their goal—an admission spot into college. Williams was paid $12,500 over three years—barely enough to help supplement some of her rent and bills.

Finally, she had no proprietary interest in the activity and was simply paid to perform certain tasks.

B. *The forfeiture amount should only be $12,500*

Based on an unsworn statement by Martin Fox, the Government, and probation, claim Niki received $20,000. That is not true. For her role, she only received $12,500. Her order of forfeiture should reflect that. As she notes in her sworn affidavit, she is more likely to remember the amount of money she received than Martin Fox:

---

[3] She obviously knew Rick Singer, but only through Martin Fox. She had no independent connection to Singer.

4. Between the money I earned working and my monthly expenses, I did not really have savings. I largely lived paycheck to paycheck. I was able to pay my expenses, but I was aware of every dollar that came in and out of my checking account.

5. I never asked Martin Fox for any specific amount of money. He gave me money and I accepted it. But I never asked or negotiated for any amount. It was the same with Rick Singer. He offered to send me a check, which I accepted. But I did not ask for a specific amount and took what he gave me.

6. For the three times Martin Fox recruited me to help with the exams, he paid me $2,500 in cash. I remember this vividly because $2,500 is a lot of money to me. I was not making enough money at the time that I would forget whether I received $2,500 or $5,000.

7. When I received the check from Rick Singer, I obviously saw it was for $5,000. Because I had not had contact with Martin Fox for that exam, I assumed Mr. Singer was paying me both our shares. That is, I assumed that Mr. Fox and I each received $2,500 each time. Because he was not a part of this test, I assumed I received the entire $5,000.

*See Affidavit of Niki Williams*, Exhibit 1.

### C.  NEED FOR THE SENTENCE IMPOSED

One federal judge has framed the purposes of sentencing as follows:

> We have long understood that sentencing serves the purposes of retribution, deterrence, incapacitation, and rehabilitation.  Deterrence, incapacitation, and rehabilitation are prospective and societal – each looks forward and asks:  What amount and kind of punishment will help make society safe?  In contrast, retribution imposes punishment based upon moral culpability and asks:  What penalty is needed to restore the offender to moral standing within the community?

*United States v. Cole*, 622 F. Supp. 2d 632, 637 (N.D. Ohio 2008); *see* 18 U.S.C. § 3553.

> 1. *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*[4]

Incarceration is unnecessary for a just punishment in this case. Niki's own actions have resulted in tremendous punishment. As noted, she lost her job and has struggled to find new employment. She had to use money from her pension to make ends meet. This offense is also national news. Most people convicted of mail fraud do not get the kind of negative publicity that Niki has received. But unlike others in this case, she will not just bounce back. She does not have wealth or savings, nor does she have a career where this transgression is quickly forgiven. *See* Exhibit 3 (*Felicity Huffman will make her acting comeback in a TV baseball comedy*, LA Times, Nov 30, 2020). The sheer stigma of being associated with this scandal is a harsh sanction for her.

Additionally, on account of her conviction, she will be unable to vote while on probation (or supervised release). *See* V. T. C. A., Election Code § 11.002, TX ELECTION § 11.002. Her path has been, and will continue to be, arduous.

Finally, the guidelines recognize that an incarcerated sentence is unwarranted. Not every transgression merits incarceration; not every defendant warrants prison. This defendant is sufficiently punished by admitting she broke the law, being placed on probation, and all the consequences that have and will come from that.

---

[4] *See* 18 U.S.C. § 3553(a)(2)(A).

   2.   *To afford adequate deterrence to criminal conduct;*[5]

No sentence will deter Niki more than the circumstances she is already living through. Her job meant the world to her. Losing it, and the prospect of teaching again, has been a life-altering blow. It is not lost on her. Nor is it lost on others. Sending someone to prison is not the only way to send a message to the public. This case is a good example of the severe consequences that can come from what may seem like small indiscretions.

   3. *Protect the public from further crimes;*[6]

The public needs no protection from Niki. She did not seek criminal involvement, it found her. Having been through this experience, she has learned her lesson. Despite her initial, benevolent intentions, she knows that no good deed is worth the cause of fraud and trickery. She has experienced more setbacks than most of her co-defendants. But she has accepted it and vowed to come out stronger. This offense was not the beginning of some criminal lifestyle. It was an aberrant act of an objectively good-hearted person. Niki may not know where her prospects lay, but this Court can be confident they will not involve conduct like this ever again.

---

[5]   *See* 18 U.S.C. § 3553(a)(2)(B).

[6]   *See* 18 U.S.C. § 3553(a)(2)(C).

IV.     **REQUEST FOR RECOMMENDATIONS**

Niki requests this Court sentence her to one year of probation.

                                        Respectfully submitted,
                                        NIKI WILLIAMS
                                        By her attorney,

                                        /s/ Eric Tennen
                                        Eric Tennen, BBO # 650542
                                        Swomley & Tennen, LLP
                                        50 Congress Street, #600
                                        Boston, MA  02109
                                        Tel. 617-227-9443
                                        Fax. 617-227-8059
                                        etennen@swomleyandtennen.com

Dated: December 14, 2020

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including counsel for the Government.

                                        /s/ Eric Tennen
                                        Eric Tennen